**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:   MARYANN KICENIUK,                          Chapter 7
                                                    Case No. 12-17802 (RTL)

        Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - -X

## <u>MEMORANDUM OPINION</u>

**APPEARANCES:**

William S. Woflson, Esq.. L.L.C.
William S. Woflson, Esq.
Attorney for Debtor

Atkinson & DeBartolo, P.C.
Bunce D. Atkinson, Esq.
Attorney for Trustee

**<u>RAYMOND T. LYONS, U.S.B.J.</u>**

## <u>INTRODUCTION</u>

The chapter 7 trustee objected to Debtor's exemption in a variable annuity under section

522(d)(10)(E).   The court finds that the trustee has not presented sufficient evidence to rebut the

presumption of validity.   Additionally, the court finds that the annuity meets the three

requirements of section 522(d)(10)(E) in that it is an annuity or similar plan, that Debtor's right to

receive payment is on account of age, and that the amount to be exempted is reasonably necessary

for Debtor's support.   The trustee's objection is overruled and the variable annuity may be

properly exempted under section 522(d)(10)(E).

1

## JURISDICTION

This court has jurisdiction of this proceeding under 28 U.S.C. § 1334(a) and (b), 28 U.S.C.

§ 157(a) and the Standing Order of Reference by the United States District Court for the District of

New Jersey dated July 23, 1984, and Amended by Order dated September 18, 2012, referring all

cases and proceedings arising under Title 11 of the United States Code to the bankruptcy court.

This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B) concerning the

allowance or disallowance of exemptions from property of the estate.

## BACKGROUND

Debtor, Mary Ann Kiceniuk, filed for relief under Chapter 7 on March 27, 2012.   On

Schedule B - Personal Property, Item 10 she listed "Annuity Prudential Variable Investment Plan"

with a value of $12,188.23.   On Schedule C – Property Claimed As Exempt she claimed the full

value of the annuity as exempt under 11 U.S.C. § 522(d)(10)(E).   The trustee objected to the

exemption and argued that the documentation provided to him by the Debtor indicated that the

annuity is not a retirement annuity.   He attached a copy of the December 31, 2011, annual

statement and pointed to language that provides:   "withdrawals made prior to the statement date

are reflected in the value shown above.   The Maturity Date is the end of your Guarantee Period.

The surrender value may change daily to reflect the investment performance of the Sub-Accounts

in which you are invested and fluctuations in our current fixed rates."   The trustee further argued

that "Nothing contained in this annuity indicates that the Debtor is entitled to the exemption

because it is not an annuity that is part of a qualified retirement plan, and was purchased by the

2

Debtor."

In response, Debtor certified that the funds to purchase the annuity came from her 401(k) account.   While she was employed, she contributed to the 401(k) plan by deductions from her salary.   When she retired she rolled over the balance in her 401(k) account into the annuity upon the advice of a Prudential agent.   The Debtor also submitted a copy of the annuity contract.   The contract is described as a Variable Annuity Contract with Flexible Purchase Payments.   On page 1, Prudential Insurance Company promised, "We will make monthly payments starting on the annuity date …"   The annuity date is November 1, 2016, at which time the Debtor will be 69 years of age.   An amendment to the contract provides: "The annuity date may not be changed to a date that is later than April 1st of the calendar year next following the end of the calendar year in which the annuitant would attain age 70 ½."   The contract has a death benefit as well as the annuity feature.   The amount of the annuity payments depends on the investment returns achieved by the investments selected by the Debtor.   Also, the Debtor has the right to withdraw part or all of the amount in her investment account prior to the annuity date.   During the first seven years of the contract the Debtor would incur a sales charge for a withdrawl.

The contract provides on page 1:

> We make this contract available in connection with pension,
> profit-sharing and annuity purchase plans and Individual
> Retirement Annuities intended to qualify for special Federal Income
> Tax treatment under the Internal Revenue Code of 1954, as
> amended.   In order to obtain or retain that tax treatment the exercise
> of rights and privileges under the contract by the Annuitant may be
> restricted.   We assume no responsibility for determining that a
> particular plan or Individual Retirement Annuity is so qualified, that
> a particular Annuitant is eligible under the plan or Individual
> Retirement Annuity or that the exercise of such rights and privileges
> complies with the restrictions.

On page 8, the contract further provides:

> **Effect of Loss of Tax-Qualified Status or Failure to Qualify**. – If, for any reason, you become ineligible to participate or cease to be a participant in the pension, profit-sharing or annuity purchase plan or Individual Retirement Annuity in connection with which this contract is issued, or if the plan is discontinued or loses its tax-qualified status, we may refuse to accept further purchase payments under this contract.
>
> If we determine that an applicable pension, profit-sharing or annuity purchase plan was not tax-qualified when this contract was issued, or, if applicable, that you were not eligible to establish an Individual Retirement Annuity for which this contract was issued, here is what we may do:  (1) If, when we make the determination, we then provide a similar contract for the non-tax-qualified market, we may offer to exchange this contract for such a non-tax-qualified contract. Any such exchange will be made without redemption charge, but will be subject to any conditions or adjustment which we determine to be necessary.  Or (2), if we do not then offer a similar contract for the non-tax-qualified market, we may terminate this contract and liquidate all the subaccount units credited to it.  After deducting the Annual Maintenance Charge and the sales charge, if any, we will pay you the balance within seven days after the termination of the contract.

The amendment to the contract provides:

> A change might be needed later to conform this contract to the requirements of the Internal Revenue Code, regulations or published rulings or to the requirements of the Employee Retirement Income Security Act of 1974.  If so, we will have the right to make the change(s) without a signed request and to provide a form of amendment to the contract.

It is more likely than not that the Debtor established an Individual Retirement Annuity with

Prudential that qualifies under section 408(b) of the Internal Revenue Code (IRC) and rolled over

the balance in her 401(k) on a tax free basis at the time she retired from her job, but documentation

4

confirming the fact has not been provided.    If the Debtor does have an Individual Retirement

Annuity qualified under IRC § 408 she would be entitled to claim it as exempt under §522(d)(12).

She has not made that claim.

## DISCUSSION

### *Burden of Proof*

Rule 4003(c) provides that in any hearing wherein a party objects to a claimed exemption,

the objecting party bears the burden of proving that the exemption is not properly claimed.    FED.

R. BANKR. P. 4003(c).    Such burden may be met by a preponderance of the evidence.    *In re*

*LeClair*, 461 B.R. 86, 90 (Bankr. D. Mass. 2011).    Additionally, courts have understood that

4003(c) operates under a burden shifting framework.    The Ninth Circuit explains:

> A claimed exemption is presumptively valid.... Once an exemption
> has been claimed, it is the objecting party's burden ... to prove that
> the exemption is not properly claimed. Initially, this means that the
> objecting party has the burden of production and the burden of
> persuasion. The objecting party must produce evidence to rebut the
> presumptively valid exemption. If the objecting party can produce
> evidence to rebut the exemption, the burden of production then
> shifts to the debtor to come forward with unequivocal evidence to
> demonstrate that the exemption is proper. The burden of persuasion,
> however, always remains with the objecting party.

*Carter v. Anderson* (*In re Carter*), 182 F.3d 1027, 1029 n. 3 (9th Cir.1999) (internal quotation

marks and citations removed).    Thus, even if the objecting party successfully rebuts the *prima*

*facie* validity of a claimed exemption, the final burden of persuasion remains on the objecting

party.    *In re Nicholson*, 435 B.R. 622 (B.A.P. 9th Cir. 2010).    As this case illustrates, placing the

burden of proof on the objector presents a formidable task since most of the information regarding

5

the exempt asset will be held by the debtor or some other third party, not the objector.

### 522(d)(10)(E)

Debtor in this case claims an exemption under 522(d)(10)(E).   That section provides that a

debtor may exempt:

> The debtor's right to receive . . . a payment under a stock bonus, pension,
> profitsharing, annuity, or similar plan or contract on account of illness,
> disability, death, age, or length of service, to the extent reasonably
> necessary for the support of the debtor and any dependent of the debtor,
> unless--
>> (i) such plan or contract was established by or under the auspices of
>> an insider that employed the debtor at the time the debtor's rights
>> under such plan or contract arose;
>> (ii) such payment is on account of age or length of service; and
>> (iii) such plan or contract does not qualify under section 401(a),
>> 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.

11 U.S.C. § 522(d)(10)(E) (2012).

In order for an exemption to be properly claimed under 522(d)(10(E), the asset must meet

three requirements:

> (1) the right to receive payment must be "under a stock bonus, pension,
> profitsharing, annuity, or similar plan or contract";
> (2) the right to receive payment must be "on account of illness, disability,
> death, age, or length of service"; and
> (3) the right to receive payment may be exempted only "to the extent
> reasonably necessary for the support of the debtor and any dependent of the
> debtor."

*In re Krebs*, 527 F.3d 82, 84-85 (3d Cir. 2008); 11 U.S.C. § 522(d)(10)(E).[1]

The Supreme Court has recently shed some light on exemptions under 522(d)(10)(E).   In

*Rousey v. Jacoway*, the Court discussed whether IRAs could be exempted under 522(d)(10)(E).

---

[1] Although *Krebs* states that the debtor must establish that the three requirements for exemption are met, *Krebs* does not mention Rule 4003(c), the presumption of validity, or burden shifting.   Thus *Krebs* should not be read as modifying which party bears the ultimate burden of persuasion.   Because Rule 4003(c) puts the burden on the objecting party, it is clear that it is not the debtor that must establish that the three requirements are met.   Rather, it is the objecting party that must establish that one of the three requirements is *not* met.

544 U.S. 320, 326 (2005).   The Court focused on the language "or other similar plan or contract."

In order to analyze what Congress meant by this phrase, the Court examined the common features

of the enumerated plans and contracts: stock bonuses, pensions, profitsharing plans, and annuities.

The Court explained:

> The common feature of all of these plans is that they provide income
> that substitutes for wages earned as salary or hourly compensation.
> This understanding of the plans' similarities comports with the other
> types of payments that a debtor may exempt under §
> 522(d)(10)—all of which concern income that substitutes for wages.

*Id.* at 331.

Collier on Bankruptcy explains: "The characteristic shared by all of the plans or contracts

listed in section 522(d)(10)(E) ("stock bonus, pension, profitsharing, annuity"), according to

[*Rousey*], is that they provide income as a substitute for wages and do not operate merely as

savings accounts."   Collier on Bankruptcy ¶ 522.09[10][a], (16th ed. 2012).

As explained above, the trustee's objection only contained a copy of the annuity statement.

Thus, before the court at that point was a presumptively valid exemption claim and an objection by

the trustee that did not provide enough information for the court to determine whether the annuity

qualified for exemption.   This clearly does not meet preponderance of the evidence standard.

The annuity contract was provided by the Debtor after the trustee objected.

The court therefore finds that the trustee has not met his burden of proof as provided under

Rule 4003(c).   Nevertheless, the evidence on the record demonstrates that Debtor is entitled to

claim an exemption under 522(d)(10(E) as to the annuity, to which the court will now turn its

attention.

*Rousey* demonstrates that the pertinent question in cases such as this one is whether the

annuity at issue provides income as a substitute for wages.   In analyzing whether the IRAs in

*Rousey* acted as a substitute for wages, the Court looked to four factors in finding that they did.

First, the Rouseys' IRAs required them to begin distribution, at the latest, in the year in which they

turned 70 ½.   Second, taxation on monies in IRAs is deferred until the year in which they are

withdrawn, which encourages account holders to wait until retirement.   Third, withdrawals made

before 59 ½ are subject to a tax penalty.   Fourth, if an account holder fails to withdraw the

requisite minimum funds, the account holder is subject to a fifty percent tax penalty on the funds

improperly remaining in the account.   *Rousey*, 544 U.S. at 331-32.

A similar analysis of Debtor's annuity demonstrates that it is likewise a plan designed to

provide income as a substitute for wages.   Debtor has certified that she used funds from her

401(k) to purchase the annuity.   Money was deducted from salary she earned prior to 1986 in

order to fund the 401(k).   She eventually rolled her 401(k) into the annuity now in question.

Although the contract language does not specifically require Debtor to begin taking distributions

in the year in which she turns 70 ½, it does provide that the annuity date may not be changed to a

date that is later than the year in which Debtor turns 70 ½, despite the trustee's argument to the

contrary, thus payments will begin no later than that year.   Also, it appears that this variable

annuity is governed by section 72 of the Internal Revenue Code (IRC).   I.R.C. § 72 (2012).

Under section 72(a)(1), taxes are deferred until the year in which the Debtor withdraws funds.

Also, any withdrawals made before she turned 59 ½ would have been subject to a tax penalty.

I.R.C. § 72(q).   If, as the court surmises, this is a qualified Individual Retirement Annuity under

IRC § 408(b), Debtor would be subject to the fifty percent tax penalty on funds improperly

remaining in the account after she turns 70 ½.  *See* I.R.C. § 4974(a) (2012); *see also* I.R.C. §

408(b)(3) (2012).

There are cases explaining that when a debtor purchases a variable annuity with a lump

sum payment, the annuity may not be exempted.    *See, e.g.*, *In re Michael*, 339 B.R. 798 (N.D. Ga.

2005); *see also In re Weidman*, 284 B.R. 837 (E.D. Mich. 2002).   However, those cases are

distinguishable on the basis that the debtors each funded their annuities with proceeds from

inheritances and thus they had not contributed to the source of funds over time.    *Michael*, 339

B.R. at 804; *Weidman*, 284 B.R. at 840.   As Debtor certifies, the funding for her annuity comes

from her 401(k) to which she contributed regularly.   These cases, along with *Rousey*, demonstrate

that annuities that were established in the manner now before the court provide a substitute for

wages and therefore meet the first requirement of § 522(d)(10)(E).

As to the second requirement, the Supreme Court has interpreted the phrase "on account

of" to mean "because of."   "Thus, 'on account of' in § 522(d)(10)(E) requires that the right to

receive payment be 'because of' 'illness, disability, death, age, or length of service.'"   *Id.* at

326-27.   In *Rousey*, the debtors did have the right to withdraw the balance of their IRA at any time

as long as they were willing to pay a ten percent penalty.   The court held that this was sufficient to

meet the "on account of" language.   Thus, for a debtor to satisfy this requirement, it is not

necessary that a debtor have no right to access their funds.   Rather, it is only necessary that a

debtor's right to access the funds be limited in some significant way because of their age.   *See id.*

at 327-28.   In this case, as explained earlier, any withdrawals made before Debtor reached 59 ½

would have been subjected to a 10 percent tax penalty.   Furthermore, in the early years of the

contract she would have incurred a sales charge.   Thus, just as in *Rousey*, Debtor's access to her

annuity was restricted on account of age.   Based on this, the court finds this requirement is

satisfied.

As to the third requirement, Debtor argues that the funds are reasonably necessary for her support because she has health issues preventing her from working.   Furthermore, her Schedule I discloses minimal income from Social Security and a small pension.   The trustee has not argued otherwise and thus the court finds that this requirement is satisfied.

## <u>CONCLUSION</u>

The trustee has failed to rebut the presumption of validity provided under Rule 4003(c). The relevant inquiry is whether the plan is designed as a substitute for wages, whether the right to receive payment under such plan is "on account of illness, disability, death, age, or length of service," and whether the amount exempted is "reasonably necessary for the support of the debtor and any dependent of the debtor."   The court finds from the evidence submitted by the Debtor that each of the requirements is met in this case and the asset may be properly claimed as exempt under § 522(d)(10)(E).   Therefore, the trustee's objection is overruled.

Dated:   September 28, 2012                    **/S/ _Raymond T. Lyons_**
                                                United States Bankruptcy Judge

10